UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITY GENERAL HOSPITAL,<br>207 Old Lexington Road<br>Thomasville, NC 27360,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL O. LEAVITT, Secretary,<br>Department of Health and Human<br>    Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Community General Hospital, by and through its undersigned attorneys, brings this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and states as follows:

**A.    Jurisdiction and Venue**

1. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 et seq. (the "Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 et seq.

2. This Court has jurisdiction under 28 U.S.C. §§1331 and 1361.

3. Venue lies in this judicial district under 28 U.S.C. §1391.

2730670.1

B.  **Parties**

4.  Plaintiff Community General Hospital ("Community General") is a 149-bed, not-for-profit, acute care hospital located in Thomasville, North Carolina. It furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program.

5.  Michael O. Leavitt is the Secretary of the Department of Health and Human Services ("HHS"), the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this complaint, plaintiff will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

C.  **General Background**

6.  The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. §1395cc, plaintiff entered into a written agreement with defendant to provide hospital services to eligible individuals.

7.  Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient hospital services, such as plaintiff, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be

2

included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. §1395x(v)(1)(A).

8. In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered." *Id*. The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider Reimbursement Manual.

9. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as plaintiff, for inpatient hospital operating costs. *See* 42 U.S.C. §1395ww(d).

10. Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital, such as plaintiff, that participates in Medicare. Fiscal intermediaries make periodic interim payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. §1395h.

11. At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§413.24 and 413.50. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period.

3

12. If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

   a. The hospital has a right to obtain a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB") by filing an appeal with the Board within 180 days of receiving its NPR. *See* 42 U.S.C. §1395oo.

   b. The hospital may request reopening of an intermediary's determination within three years of the date of notice to the hospital of the intermediary's determination. 42 C.F.R. §405.1885(a).

13. Regardless whether a hospital files for a PRRB hearing or seeks reopening, regulations adopted by the Secretary, and in effect at all times relevant to this complaint, required an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS. 42 C.F.R. §405.1885(b)(2001).

D. **Procedure for Administrative and Judicial Review of PRRB Decisions**

14. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. §405.1873, the Board is authorized to decide questions relating to its jurisdiction. The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. §1395oo(f)(1); 42 C.F.R.

4

§§405.1875 and 405.1877. The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.

15. A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the Board, by filing suit within 60 days of receipt in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f).

16. The Supreme Court has held that a decision denying a provider's request for reopening under 42 C.F.R. §405.1885(a) is not subject to judicial review. *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449 (1999). However, judicial relief is available where an intermediary fails to issue a corrective reopening required under 42 C.F.R. §405.1885(b). *Monmouth Medical Center ("Monmouth") v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001). Such relief is available regardless of whether the provider has sought reopening. *Baystate Health Systems v. Leavitt ("Baystate")*, 414 F.3d 7 (D.C. Cir. 2005).

E. **Medicare's Policies Regarding Payment for the Disproportionate Share Hospital Adjustment**

17. Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. §1395ww(d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital or "DSH" adjustment, is available to PPS hospitals that serve a disproportionate share of low-income patients. *See* 42 U.S.C. §1395ww(d)(5)(F).

18.   Under 42 U.S.C. §1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for PPS hospitals serving a "significantly disproportionate number of low-income patients," which is computed for a given cost-reporting period based on the sum of two fractions.  For one of these fractions, known as the "Medicaid Low Income Proxy," it is necessary to determine the number of inpatient days that patients who "were **eligible** for medical assistance [*i.e.* Medicaid]" received services at the hospital.  42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added).  In general, the more Medicaid inpatient days that a hospital has, the larger will be its Medicare DSH adjustment.  For the other fraction, it is necessary to determine the number of inpatient days that patients who "were entitled to supplemental security income benefits" received services at the hospital.  42 U.S.C. §1395ww(d)(5)(F)(vi)(I).

19.   A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment.  *See* 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. §412.106.  This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days:

> for which benefits are payable under [Medicaid].  Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible"

6

Medicaid inpatient days, when computing the DSH adjustment. This is known as the Secretary's "paid days" policy.

20. The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. *See Jewish Hosp., Inc. v. Secretary of Health and Human Services*, 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996). Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

21. As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. §401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients **eligible** for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy. A true copy of HCFAR 97-2 is attached hereto as Exhibit A.

22. By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

7

23. The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

24. HCFAR 97-2 also explicitly provides that it is effective for "all cost-reporting periods beginning on or after February 27, 1997." However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

25. HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth, supra*. The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the providers in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

26. The *Monmouth* decision is final and no longer subject to further judicial review. Therefore, relief under HCFAR 97-2 is available to providers, such as plaintiff.

**F. <u>Facts Applicable to Plaintiff</u>**

27. On or about September 22, 1998, plaintiff's Medicare fiscal intermediary, CAHABA Government Benefits Administrators ("the intermediary"), issued plaintiff's FY 1996 NPR, which included a DSH payment of $1,114,714.

28. This payment determination was made using "paid," rather than "eligible" inpatient Medicaid days. Because of the issuance of HCFAR 97-2, the intermediary was required to make this payment determination using all of plaintiff's "eligible" inpatient Medicaid days. This DSH payment determination is incorrect because plaintiff's intermediary did not use all of plaintiff's "eligible" inpatient Medicaid days when making it. If this payment determination were made using all of plaintiff's "eligible" days, plaintiff would expect that it would increase substantially.

29. The intermediary has not corrected this DSH payment determination and plaintiff has not been given assurance that this payment determination will be corrected under the reopening process or otherwise.

30. Under the decisions of the Court of Appeals in *Monmouth and Baystate, supra*, and other authority, the Secretary must correct plaintiff's FY 1996 DSH payment determination in accordance with the methodology set forth in HCFAR 97-2.

31. This Court has jurisdiction under 28 U.S.C. §1361 and plaintiff is entitled to a writ of mandamus because the intermediary has not reopened and

corrected plaintiff's FY 1996 DSH payment determination in accordance with *Monmouth, Baystate,* and other authority or given assurance that it would.

32. This Court also has jurisdiction to hear this case under 28 U.S.C. §1331 because a finding by this Court that it lacks mandamus jurisdiction could foreclose plaintiff's ability to obtain judicial review of the intermediary's unlawful failure to reopen and correct plaintiff's FY 1996 DSH payment determination. Where a plaintiff is challenging administrative action (or inaction) by the Secretary for which jurisdiction is not provided under the Social Security Act, the Supreme Court has held that jurisdiction for such review is available under 28 U.S.C. §1331 because of "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986).

## COUNT I

33. Plaintiff hereby incorporates by reference paragraphs 1 - 32 herein.

34. Plaintiff is entitled to issuance of a writ of mandamus under the *Monmouth* decision and other authority because the intermediary has a non-discretionary duty to correct plaintiff's improper Medicare DSH payment determination and the intermediary has not reopened plaintiff's FY 1996 NPR to correct it.

## COUNT II

35. Plaintiff hereby incorporates by reference paragraphs 1 - 34 herein.

36. Plaintiff is entitled to obtain proper Medicare DSH payment determinations under the Secretary's "eligible days" policy.

G.  **Requested Relief**

WHEREFORE, plaintiff requests:

1. the issuance of a writ of mandamus requiring the Secretary to order plaintiff's intermediary, or its successor in interest, to reopen plaintiff's FY 1996 Medicare DSH payment determination and recalculate it using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

2. an order requiring the Secretary to order plaintiff's intermediary, or its successor in interest, to reopen plaintiff's FY 1996 Medicare DSH payment determination and recalculate it using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

3. legal fees and costs of suit incurred by plaintiff; and

4. such other relief as this Court may consider appropriate.

Respectfully submitted,

Dated: March 10, 2006

Robert L. Roth, Esq. (D.C. Bar No. 441803)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel: (202) 624-2870
Fax: (202) 628-5116
Attorneys of Record for Community General Hospital